413 So.2d 1179 (1982)
Doris T. WOODS and Government Employees Insurance Company, Petitioners,
v.
Donald WITHROW, Darnell Withrow, and Cavalier Insurance Company, Respondents.
No. 59664.
Supreme Court of Florida.
April 29, 1982.
*1180 Ronald L. Harrop of Gurney, Gurney & Handley, Orlando, for petitioners.
A. Craig Cameron of Cameron, Marriott, Walsh & Hodges, Orlando, for respondents.
PER CURIAM.
This cause is before the Court to review the case of Withrow v. Woods, 386 So.2d 607 (Fla. 5th DCA 1980). The district court certified that its decision was in direct conflict with 3-M Electric Corp. v. Vigoa, 369 So.2d 405 (Fla. 3d DCA 1979).[1] We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Vicki Woods, a minor, was a passenger in an automobile being operated by her mother Doris Woods when the car collided with another vehicle being operated by Darnell Withrow. Vicki Woods was injured and sued Darnell Withrow for damages based on his negligence. Also named as defendants were Donald Withrow, the owner of the automobile Darnell Withrow was driving, and Cavalier Insurance Company. The negligence action was instituted by Doris Woods on behalf of her daughter. The defendants filed a counterclaim against Doris Woods and her insurer, alleging that Mrs. Woods negligently contributed to the collision that caused her daughter's injuries, and sought contribution.
During the course of the litigation, the Withrows' insurer offered the maximum amount of their liability coverage in settlement of Vicki's claim. Vicki accepted the offer of settlement and executed a release in favor of the defendants. The release did not mention her mother or anyone in privity with her. Doris Woods and her insurer then moved for summary judgment on the defendants' claim for contribution, relying on subsection 768.31(2)(d), Florida Statutes (1979).
Contribution among tortfeasors is governed by section 768.31, Florida Statutes (1979), which codifies Florida's version of the Uniform Contribution Among Tortfeasors Act. Subsection (2) states the conditions governing the right of contribution among tortfeasors. Subsection 768.31(2)(d) provides:

*1181 A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement or in respect to any amount paid in a settlement which is in excess of what was reasonable.
The trial judge agreed that, since the settlement and release had not extinguished the liability of Mrs. Woods as a joint tortfeasor, the defendants were not entitled to contribution and entered judgment denying contribution.
On appeal the district court reversed the summary judgment. It held that there was a right to contribution against a parent as a joint tortfeasor, and that in light of the family immunity's bar on direct actions between child and parent the requirements of subsection 768.31(2)(d) had been satisfied.
In her appeal to this Court, Mrs. Woods raises two issues for our consideration. The first is whether there is a right of contribution against a joint tortfeasor who is the parent of the injured minor. The second is whether a tortfeasor who fails to comply with the provisions of subsection 768.31(2)(d) may obtain contribution against the parent of the injured minor.
We answered the first question in Joseph v. Quest, 414 So.2d 1063 (Fla. 1982). In Quest we allowed contribution, but only to the extent of the parent's available liability insurance coverage. If the parent is without liability insurance, or if the policy contains an exclusion clause for household or family members, then contribution will not be allowed.
The second issue deals with the district court's decision reversing the ruling of the trial court that contribution would not be allowed because the settlement and release did not meet the statutory requirement of subsection 768.31(2)(d). In order to properly answer this we must examine the language of that subsection in the context of the entire uniform act and the policies it was intended to achieve.
Subsection (2) of the act establishes the "right to contribution."[2] Paragraph (a) provides that it is not necessary that the action against all or any of the jointly or severally liable tortfeasors proceed to judgment. Paragraph (b) indicates that the factor giving rise to the right to contribution is payment in excess of a tortfeasor's "pro rata share of the common liability."
Paragraph (d), the provision at issue, provides that a tortfeasor who settles with the plaintiff is only entitled to contribution if *1182 the settlement also releases the tortfeasor from whom contribution is sought. In the case of two joint tortfeasors, then, the right of a settling tortfeasor to contribution from the other would depend on whether the injured plaintiff has accepted the settlement as a complete satisfaction and has given a complete release.
The policy of the Act is to encourage rather than discourage settlements. The tortfeasor who settles removes himself entirely from the case so far as contribution is concerned if he is able and chooses to buy his peace for less than the entire liability. If he discharges the entire obligation it is only fair to give him contribution from those whose liability he has discharged. Since the settlement must be reasonable it follows that the question of total liability to the injured party may be litigated in the contribution action.
Unif. Contribution Among Tortfeasors Act § 1(d), Commissioners' Comment (1955 Revision), 12 U.L.A. 65 (Master Ed. 1975).
Subsection (3) contains provisions on how the "pro rata shares of tortfeasors in the entire liability" are determined:
(a) Their relative degrees of fault shall be the basis for allocation of liability.
(b) If equity requires, the collective liability of some as a group shall constitute a single share.
(c) Principles of equity applicable to contribution generally shall apply.
Paragraph (a) varies from the uniform act. In the uniform act, paragraph (a) reads: "their relative degrees of fault shall not be considered." Under the uniform act, "pro-rata shares" means the entire liability is allocated evenly among the tortfeasors, except where equitable principles call for some variance from that formula by virtue of paragraph (b) or (c). When Florida first adopted the uniform act, it adopted the official version of paragraph (a). Ch. 75-108, § 1, Laws of Fla.
In Lincenberg v. Issen, 318 So.2d 386 (Fla. 1975), the Supreme Court of Florida decided to abolish the doctrine against contribution among joint tortfeasors, since the rule seemed inappropriate in the light of the Court's abolition of the defense of contributory negligence in favor of comparative negligence in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973). The majority opinion in Lincenberg indicates that the Court was inclined to authorize judicially a right to contribution among tortfeasors based on allocation of degrees of fault, without abrogating the right of a nonnegligent plaintiff to secure judgment for the full amount of his damages from any one or more of the jointly and severally liable tortfeasors. During the pendency of the certiorari proceedings in Lincenberg, however, the legislature enacted the uniform act in its original, official form, and the Court held that the legislative prohibition on considering the relative degrees of fault of the tortfeasors controlled. The following year, the legislature amended paragraph (a) to provide for consideration of relative degrees of fault. Ch. 76-186, § 1, Laws of Fla. Therefore, Florida now follows a consistent policy of apportioning liability among all the contributing tortfeasors, except where paragraph (b) or (c) requires some equitable adjustment.[3]See Unif. Contribution Among Tortfeasors Act, § 2; Commissioner's Comment (1955 Revision), 12 U.L.A. 87-88 (Master Ed. 1975); Note, Contribution Act Construed  Should Joint and Several Liability Have Been Considered First?, 30 U. Miami L.Rev. 747 (1976).
Subsection 768.31(4) provides that the right of contribution may be enforced either by separate action or in the same action as the initial claim when two or more defendants are adjudged liable. Subsection (4) also places time limitations on the enforcement of the right to contribution. Paragraphs (4)(e) and (f) provide:
(e) The recovery of a judgment for an injury or wrongful death against one *1183 tortfeasor does not of itself discharge the other tortfeasors from liability for the injury or wrongful death unless the judgment is satisfied. The satisfaction of the judgment does not impair any right of contribution.
(f) The judgment of the court in determining the liability of the several defendants to the claimant for an injury or wrongful death shall be binding as among such defendants in determining their right to contribution.
Subsection (5) of the act provides:
(5) RELEASE OR COVENANT NOT TO SUE.  When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,
(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.
We are especially concerned with the relationship between subsection (5) and paragraph (2)(d). Under subsection (5)(a), when Vicki Woods accepted the settlement offer of the defendants and released them, such release would not have discharged her mother's liability, if her mother had any liability in tort to Vicki. See Ard v. Ard, 414 So.2d 1066 (Fla. 1982). Under subsection 5(b) the defendants, by offering a settlement and obtaining a release given in good faith, assured that they would be completely discharged from all liability not only to Vicki but also for contribution to any other tortfeasor. Although paragraph (5)(b) permits a plaintiff "to release one tortfeasor from his fair share of liability" and is subject to criticism for susceptibility to favoritism or collusion, this potential problem is outweighed by the benefits.
It seems more important not to discourage settlements than to make an attempt of doubtful effectiveness to prevent discrimination by plaintiffs, or collusion in the suit. Accordingly the subsection provides that the release in good faith discharges the tortfeasor outright from liability for contribution. This is consistent with Section 1(d) above, [(2)(d) in Florida's version] which provides that the settling tortfeasor has himself no right of contribution against another unless he has assumed the full responsibility to the claimant.
Unif. Contribution Among Tortfeasors Act, § 4(b), Commissioners' Comment (1955 Revision), 12 U.L.A. 99-100 (Master Ed. 1975). Thus the requirement in subsection (2)(d) of the Florida statute that a settling tortfeasor, to have a right of contribution, must have "extinguiished" the liability of the other tortfeasor can be seen in the light of subsection (5) to express the intent that a settling tortfeasor, to get contribution, must have extinguished the "full responsibility to the claimant." A tortfeasor who settles without extinguishing the entire liability, and whose payment later turns out to be less than his fair share, is not subject to actions for contributions to others. § 768.31(5)(b), Fla. Stat. (1979). A tortfeasor who settles without extinguishing the liability of another tortfeasor, and whose payment later turns out to be more than his fair share, has no right of contribution against the other. Id.; § 768.31(2)(d), Fla. Stat. (1979). In buying his peace, such a settling tortfeasor merely misjudged the value of the claim. Best Sanitary Disposal Co. v. Little Food Town, Inc., 339 So.2d 222 (Fla. 2d DCA 1976); Comment, The Case For Comparative Contribution in Florida, 30 U. Miami L.Rev. 713, 737 (1976).
In the present case the defendants bought their peace for $10,000, the amount of liability insurance coverage. Under Joseph v. Quest, 414 So.2d 1063 (Fla. 1982), if Mrs. Woods were without liability insurance coverage, then there would be no right to contribution. On the *1184 other hand, if Mrs. Woods were protected by liability insurance, since the release granted respondents did not relieve her liability, she would not be liable for contribution under subsection 768.31(2)(d).
We therefore hold that there is no right of contribution against Mrs. Woods in this case. The trial court was correct in so holding. The decision of the district court is quashed, and this case is remanded with directions that the judgment of the circuit court be affirmed.
It is so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON and McDONALD, JJ., concur.
ALDERMAN, J., concurs in result only.
BOYD, J., dissents with an opinion.
BOYD, Justice, dissenting.
In Shor v. Paoli, 353 So.2d 825 (Fla. 1977), this Court held that under the Uniform Contribution Among Tortfeasors Act, section 768.31, Florida Statutes (1979), a tortfeasor could seek contribution from another person whose negligence had contributed to the plaintiff's injuries, even though the other person was immune from a direct action by virtue of a family relationship (marriage) with the plaintiff. Shor v. Paoli should either be applied to this case, limited to its narrow facts, or overruled. But the doctrine of family immunity as it applies to the parent-child relationship should not be abrogated in whole or in part.
I disagree with the decision to abrogate parental immunity to the extent of the parent's liability insurance. I believe such partial abrogation will disrupt family unity and harmony because, even if the parent's liability to the child is covered by insurance, an intra-family lawsuit in our adversary system divides the family members.
If we are to adhere to Shor and apply the Contribution Act to the parent's contributory negligence, then there can be no recovery of contribution in this case, because the settlement between the tortfeasor and the child did not "extinguish" the liability of the other contributorily negligent party, i.e., the mother. § 768.31(2)(d), Fla. Stat. (1979). With this much of the majority opinion I agree.
NOTES
[1] After we accepted jurisdiction and scheduled oral argument in the present case, the District Court of Appeal for the Third District overruled 3-M Electric Corp. Quest v. Joseph, 392 So.2d 256, 258 (Fla. 3d DCA 1981) (on rehearing en banc). See Fla.R.App.P. 9.331(c). Rehearing was ordered on the court's own motion, the court indicating that the earlier "panel opinion," 392 So.2d at 258, in Quest was in conflict with 3-M Electric Corp.

Quest was certified to this Court and has been published as Joseph v. Quest, No. 60,237, ___ So.2d ___ (Fla. April 29, 1982).
[2] § 768.31(2), Fla. Stat. (1979), provides:

(a) Except as otherwise provided in this act, when two or more persons become jointly or severally liable in tort for the same injury to person or property, or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.
(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is compelled to make contribution beyond his own pro rata share of the entire liability.
(c) There is no right of contribution in favor of any tortfeasor who has intentionally (willfully or wantonly) caused or contributed to the injury or wrongful death.
(d) A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement or in respect to any amount paid in a settlement which is in excess of what was reasonable.
(e) A liability insurer who by payment has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full its obligation as insurer is subrogated to the tortfeasor's right of contribution to the extent of the amount it has paid in excess of the tortfeasor's pro rata share of the common liability. This provision does not limit or impair any right of subrogation arising from any other relationship.
(f) This act does not impair any right of indemnity under existing law. When one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation.
(g) This act shall not apply to breaches of trust or of other fiduciary obligation.
[3] We fully retain the doctrine of joint and several liability. Four states have abolished or limited the doctrine of joint and several liability through their comparative negligence statutes. See Kan. Stat. Ann. § 60-258A(d) (1976); Nev. Rev.Stat. § 41.141, subd. 3 (1979); N.H. Rev. Stat. Ann. § 507:7 a (Supp. 1979); Vt. Stat. Ann., tit. 12, § 1036 (1973).