CASANUEVA, Judge.
This appeal arises from a final judgment resulting from a jury’s multi-million dollar verdict for damages from a fatal auto collision occurring on October 9, 2006. Appellant Andy Claudio a/k/a Andy Ortiz (hereinafter Mr. Claudio) owned an auto that was jointly titled with his father, Dolores Claudio Ortiz.[1] While driving this auto, Mr. Claudio was involved in a fatal collision with appellee Lourdes Regalado Falcon (“Mrs. Regalado”) who was transporting her three minor children: Ismelys Regalado, who was killed in the crash; ap-pellee Ismerai Regalado; and appellee Mi-sael Regalado Jr. Mrs. Regalado is married to appellee Misael Regalado Sr. (“Mr. Regalado”), the father of her children. Mr. and Mrs. Regalado were the joint lessees of the auto Mrs. Regalado was driving when she and Mr. Claudio collided. The Regalados instituted the lawsuit[2] underlying this appeal against Mr. Claudio for negligence and against his father as vicariously liable by reason of their joint ownership of Mr. Claudio’s auto. The jury found that Mr. Claudio and Mrs. Re-galado were each 50% negligent. It is only the apportionment of the jury’s damage award in the final judgment that Mr. Claudio challenges in this appeal.
I.The Final Judgment For Damages
The final judgment required Mr. Claudio and Mr. Ortiz to pay the following amounts: $793.76 to Mr. Regalado as the personal representative of the estate of Ismelys Regalado for uncovered medical expenses[3]; $1,000,000 to Mr. Regalado Sr. for past and future pain and suffering; $500,000 to Mrs. Regalado for past and future pain and suffering; $110,000 to Is-merai Regalado for past and future pain and suffering and her future medical expenses; and $112,500 to Misael Regalado, Jr. for past and future pain and suffering and his future medical expenses. The awards to Mrs. Regalado and the two surviving children reflect the 50% reduction the trial court made from the jury’s verdict due to Mrs. Regalado’s comparative negligence.
II.Jurisdiction
As a threshold issue, we deal with the Regalados’ pending motion to dismiss in which they argue that this court is without jurisdiction to hear Mr. Claudio’s appeal because it was untimely filed. We disagree and deny their motion to dismiss without further discussion.[4]
III.Issues on Appeal
Mr. Claudio presents two issues in this *454 appeal: first, that the initial judge[5] erred in denying his motion for leave to file a counterclaim for contribution against Mrs. Regalado; and second, that he should not be required to pay damages to Mr. Regala-do that exceed his percentage of fault. We reverse on both issues.
IV. Denial of Leave to File a Counterclaim for Contribution Issue
A. Pretrial Proceedings
Subsequent to filing his initial answer to the Regalados’ complaint, Mr. Claudio timely sought leave of court to amend his answer to include a claim for contribution against Mrs. Regalado pursuant to section 768.31, Florida Statutes (2006), the Uniform Contribution Among Tortfeasors Act. The initial judge denied him this leave, considering Mrs. Regalado more properly a Fabre[6] defendant, but allowed the issue of contribution to remain pending for later determination. The initial judge did allow Mr. Claudio leave to file an affirmative defense and a Fabre defense. After trial and the fifty/fifty verdict as to liability between himself and Mrs. Regalado, Mr. Claudio again raised the contribution issue before the initial judge and the two successor judges. Despite these repeated requests via properly filed motions, the final judgment was rendered without his contribution claim being addressed.
B. A Counter-Defendant versus a Fabre Defendant
There is no dispute about the timeliness of Mr. Claudio’s attempt to file an amended answer to the Regalados’ complaint. He moved for leave to amend his answer to the complaint to add a counterclaim against Mrs. Regalado for contribution pursuant to section 768.31. As noted above, the initial judge denied him this leave, erroneously stating that Mrs. Rega-lado was a Fabre defendant. But what Mr. Claudio was attempting to do was not to add her as a Fabre defendant or to assert a Fabre defense. Cf. Kay’s Custom Drapes, Inc. v. Garrote, 920 So.2d 1168, 1171 n. 2 (Fla. 3d DCA 2006) (holding that trial court should have allowed a defendant leave to amend its answer to add a Fabre defendant who was the co-defendant who had just been dismissed from the suit, saying “[sjection 768.81(3)(d) of the Florida Statutes requires a defendant seeking to impute fault to a negligent non-party to plead such a defense.” (emphasis added)).
In Mr. Claudio’s case, Mrs. Regalado was not a nonparty; she was a central, if not the most important, party/plaintiff. Cf. Nash v. Wells Fargo Guard Servs. Inc., 678 So.2d 1262, 1264 (Fla.1996) (holding “that in order to include a nonparty on the verdict form pursuant to Fabre, the defendant must plead as an affirmative defense the negligence of the nonparty and specifically identify the nonparty ” (emphasis added)). Precisely because Mrs. Regalado was a party, the initial judge erred in not allowing amendment of Mr. Claudio’s answer to add a counterclaim against her. This error could have been resolved in later proceedings in the trial court but, unfortunately, was not.
V. Mr. Claudio’s Percentage of Fault vis-á-vis Mr. Regalado’s Award
Mr. Claudio approaches this issue in two ways: through a claim for contribution and *455 by statute. Under either of these methods, Mr. Claudio’s monetary liability to Mr. Regalado will be halved, Mr. Regala-do’s award will not be affected, but Mrs. Regalado’s award will be reduced to zero.
A. The Uniform Contribution Among Tortfeasors Act Section 768.31, Florida Statutes
The relevant portions of the statute are the following:
(2) RIGHT TO CONTRIBUTION.—
(a) Except as otherwise provided in this act, when two or more persons become jointly or severally liable in tort for the same injury to person or property, or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.
(b) The right of contribution exists only in favor of a tortfeasor who has paid more than her or his pro rata share of the common liability, and the tortfea-sor’s total recovery is limited to the amount paid by her or him in excess of her or his pro rata share. No tortfeasor is compelled to make contribution beyond her or his own pro rata share of the entire liability.
[[Image here]]
(8) PRO RATA SHARES. — In determining the pro rata shares of tortfeasors in the entire liability:
(a) Their relative degrees of fault shall be the basis for allocation of liability.
(b) If equity requires, the collective liability of some as a group shall constitute a single share.
(c) Principles of equity applicable to contribution generally shall apply.
(4) ENFORCEMENT.—
(a) Whether or not judgment has been entered in an action against two or more tortfeasors for the same injury or wrongful death, contribution may be enforced by separate action.
(b) When a judgment has been entered in an action against two or more tortfeasors for the same injury or wrongful death, contribution may be enforced in that action by judgment in favor of one against other judgment defendants, by motion upon notice to all parties to the action.
(c) If there is a judgment for the injury or wrongful death against the tortfea-sor seeking contribution, any separate action by her or him to enforce contribution must be commenced within 1 year after the judgment has become final by lapse of time for appeal or after appellate review.
B. Discussion
Based on section 768.31, Mr. Claudio argues that because Mrs. Regala-do was a joint tortfeasor, she was also liable for Mr. Regalado’s damages, and she should be required to contribute her share. Her share would be $500,000 of Mr. Rega-lado’s one million dollar award because of her 50% comparative negligence instead of Mr. Claudio and his father being required to pay that entire monetary award. Subsection 4(b) of the statute allows the contribution to be enforced either in the same action or by a separate action. Mr. Claudio wanted to raise the issue of contribution in the instant action, as the statute allowed him to do, but he was wrongly denied this avenue. A separate contribution action vests the court with personal jurisdiction over the contribution defendant just as a counterclaim will if made in the same suit because contribution is limited to a party who is alleged or has been found to be jointly liable in tort for the same injury or wrongful death. See § 768.31(2)(a). Although a jury might “find” a Fabre defendant jointly negligent, *456 because the Fabre defendant was not a party to that suit, and thus not under the jurisdiction of the court, no judgment can be entered against him or her because of due process concerns.[7]
The case law supports Mr. Claudio’s right to submit a contribution claim in these circumstances. See Chinos Villas, Inc. v. Bermudez, 448 So.2d 1179 (Fla. 3d DCA 1984) (reversing an order dismissing a defendant’s counterclaim against the plaintiffs/parents for the wrongful death of their child, holding that the defendant could, by counterclaim, seek contribution from the parents for their alleged negligence as contributing cause of their child’s death); Ryder Truck Lines, Inc. v. Pough, 392 So.2d 590 (Fla. 3d DCA 1981) (reversing an order dismissing a defendant’s counterclaim for contribution in an auto negligence suit filed by the injured child’s parents and reinstating the counterclaim against the child’s parents for contribution); Orlando Sports Stadium, Inc. v. Gerzel, 397 So.2d 370 (Fla. 5th DCA 1981) (in a suit for a child’s injuries at a racetrack, reversing the dismissal of the defendant’s counterclaim for contribution from the allegedly also negligent parents).
Although the initial judge erred in denying Mr. Claudio leave to amend his answer to add a claim for contribution, he mitigated this error by allowing Mr. Claudio to raise the issue of contribution post-trial. When the contribution issue was ripe for determination posttrial — because the jury had determined that Mrs. Rega-lado was a joint tortfeasor — the initial judge held a hearing on the contribution issue but reserved ruling on it. But before the judge could right his earlier error and decide Mrs. Regalado’s contribution responsibility, a second judge entered the proceedings but failed to resolve the pending issue. The second judge granted the Regalados’ motion for entry of a final judgment and rendered the final judgment without ruling for or against the setoffs for contribution. Then a third judge, who heard Mr. Claudio’s motion to reconsider entry of final judgment or to alter the final judgment, refused to change the final judgment entered by the second judge because he was told that the contribution issue had been mentioned to his predecessor. We understand why the third judge had refused to disturb the second judge’s ruling; however, the third judge heard only the fact that a contribution issue was mentioned at the hearing before the second judge, not that it had yet to be resolved. It was error to enter final judgment in favor of Mr. Regalado, individually, without accounting for Mrs. Regalado’s contribution to his damages as a joint tortfeasor with Mr. Claudio.[8]
We recognize that a contribution issue can be determined in a separate action. See § 768.31(4)(a), (c). The Regala-dos submit that under the posture of this case, Mr. Claudio’s claim for contribution must be determined in a separate action. We reject the Regalados’ argument based on a plain reading of the permissive language of the statute in subsection (4)(a): “[wjhether or not judgment has been entered in an action against two or more tortfeasors for the same injury or wrongful death, contribution may be enforced by separate action.” (Emphasis added.) But *457 Mr. Claudio, with good reason and as allowed by statute, wanted it determined in this suit. This is the preferred method:
The most orderly and logical manner in which necessary “common liability” can be established should be in a single action, which is amply set forth in the opinion in New Hampshire Insurance Co. v. Petrik, 343 So.2d 48 (Fla. 1st DCA 1977):
The logic is recognized that to allow such a procedure efficiently conserves the court’s time, effort, expense, and provides consistency of result wherein the action which establishes the plaintiffs right to recovery also establishes against whom that recovery should be made.
343 So.2d at 50.
Chinos Villas, 448 So.2d at 1180. We agree with Mr. Claudio that the better course of action is to have the issue decided as part of this same suit.[9] Deciding the issue of contribution in this action was not only a savings of judicial resources, it reduced the risk that after paying Mrs. Re-galado her full, precontribution damages, she might no longer be able to contribute; she might soon be judgment proof either because her damage award was spent or because she might have removed herself from the jurisdiction.[10] The Regalados’ concern about their ability to present affirmative defenses to the counterclaim or determine indemnification issues will be alleviated when the trial judge on remand addresses Mr. Claudio’s counterclaim in the ordinary processes of the court. We anticipate that one or more hearings will be necessary to effect a mini-trial of the counterclaim.
C. The Statutory Requirement of Section 768.81 That Reduces Mr. Claudio’s Liability
We note before continuing our discussion, and as Mr. Claudio has hastened to point out to us, that this case presents no conflict between section 768.20 and section 768.81. Section 768.20, part of Florida’s Wrongful Death Act (sections 768.16-.26), provides that “[a] defense that would bar or reduce a survivor’s recovery if she or he were the plaintiff may be asserted against the survivor, but shall not affect the recovery of any other survivor.” See Frazier v. Metro. Dade Cnty., 701 So.2d 418, 420 (Fla. 3d DCA 1997) (construing the statutory language to mean that “under the wrongful death statute, a non-negligent survivor’s recovery cannot be reduced due to another survivor’s negligence”). We adhere to the proviso of section 768.20 because our disposition does not in any manner reduce the award to Mr. Regalado, the other and non-negligent statutory survivor of the decedent, Ismelys.[11] Our disposition only reconfigures the apportionment of Mr. Regalado’s award to the negligent parties.
Section 768.81(3) is the guide to setting the parameters of Mr. Claudio’s *458 responsibility for Mr. Regalado’s award: “In a negligence action, the court shall enter judgment against each party liable on the basis of such party’s percentage of fault and not on the basis of the doctrine of joint and several liability.” In support of his argument, Mr. Claudio relies on three cases: Frazier, 701 So.2d 418; Hudson v. Moss, 653 So.2d 1071 (Fla. 3d DCA 1995); and Gurney v. Cain, 588 So.2d 244 (Fla. 4th DCA 1991). These three cases support his argument and guide our analysis.
In Frazier, a child drowned in a county-owned pool and her father filed a wrongful death suit against Metro-Dade County. Metro-Dade counterclaimed against the child’s mother. The jury found that Metro-Dade (through its lifeguards at the pool) was 14.7% negligent in the child’s death, the child’s mother was 45.8% negligent, the child’s aunt[12] was 39.5% negligent, and the father was not negligent. Although there was a sovereign immunity cap at play in the case, not present in the case we review, the manner in which the district court corrected the trial court’s apportionment of responsibility among the various tortfeasors is persuasive.
The Third District first addressed the father’s appeal in which he contended that Metro-Dade should be responsible for his full award without regard to the fact that other persons were also found negligent. The district court concluded that Metro-Dade could not be responsible for that part of the father’s award that was attributable to the aunt. 701 So.2d at 420. But the district court went on to explain that because section 768.20 had priority over section 768.81 where the two conflict, as it did in relation to the father’s award, the father’s award could not be reduced because of the mother’s negligence and “[ljikewise, the provisions of section 768.81 that eliminate joint and several liability do not apply.” Id. at 421 (citing Gurney, 588 So.2d at 246). Therefore, the district court concluded that Metro-Dade and the mother were jointly and severally liable for that part of the father’s award that was attributable to the mother’s negligence. The Third District enforced that finding by setting off as a contribution from the mother her percentage of negligence vis-a-vis the father’s award from her award.[13] Id.
Thus, not only was Mrs. Regalado’s award properly reduced by her own comparative negligence, but, like the negligent parent in Frazier, it must also be reduced by necessary contribution to her joint tort-feasor to account for her share of the non-negligent parent’s award.[14] This must be *459 done to fully compensate Mr. Regalado and avoid Mr. Claudio’s paying more than his 50% liability.
Similarly in Gurney, 588 So.2d 244, the Fourth District discussed the proper application of sections 768.81, 768.31, and 768.20. Gurney was a case of a drowned child that resulted in a wrongful death action between two couples, the Cains, who lost their daughter, and the Gurneys, in whose pool she drowned.[15] The jury apportioned the fault one-third to the Gurneys and two-thirds to Mr. Cain. The trial court awarded Mrs. Cain as the non-negligent parent her full award of $150,000 and reduced Mr. Cain’s award of $150,000 by two-thirds, down to $50,000, to account for his comparative negligence. But the Gurneys complained on appeal that Mr. Cain’s award should have been further reduced to account for contribution to help them pay Mrs. Cain’s award. The Fourth District agreed, saying that “for a negligent parent not to have to account for his or her share of the wrongdoing to the other parent would be unfair to the third party and a windfall to the negligent parent.” Id. at 246. The Fourth District reversed, relying on Johnson v. School Board of Palm Beach County, 537 So.2d 685 (Fla. 4th DCA 1989). The Gurney court noted that in Johnson, the jury had found each parent 20% negligent and the school board 60% negligent, and each parent’s award was reduced not only by their own negligence but further by their contribution toward the other parent’s damages under section 768.31. 588 So.2d at 246. The award to Mr. Cain in Gurney was reversed and remanded for the trial court to enter a judgment against Mr. Cain on the contribution claim.
In Hudson, another drowning accident resulted in a wrongful death action that the child victim’s parents, Mr. and Mrs. Moss, instituted against Mr. and Mrs. Hudson, the owners of the pool in which the child drowned. 653 So.2d at 1072. The Hudsons filed a contribution claim against Mr. Moss but the trial court dismissed it. The jury found Mr. Moss 90% negligent and the Hudsons each 5% negligent. The jury assessed $500,000 in damages to Mr. and Mrs. Moss each. The trial court entered a judgment requiring that Mr. Hudson and Mrs. Hudson each pay $250,000 to Mrs. Moss, thus awarding Mrs. Moss 100% of her damages. On appeal, the total judgment in favor of Mrs. Moss, the non-negligent parent and surviv- or, was affirmed due to the interplay between the comparative fault statute and the Wrongful Death Act because section 768.20 controlled and required that the non-negligent parent’s award not be reduced because of the negligent parent’s fault.[16] But the Fourth District concluded that the trial court had erred in dismissing the Hudsons’ contribution claim against Mr. Moss, relying on Gurney, 588 So.2d at 246, and Johnson, 537 So.2d 685. The Fourth District reasoned:
Requiring a third-party tortfeasor to bear more than their pro rata share of liability by denying them contribution *460 under these circumstances is, as the judge pointed out below, unfair. To do so would mean that a tortfeasor who is only responsible for 10% of the damages would have to pay 100% of the damages to a tortfeasor who is responsible for 90% of the damages. Under the facts of this case, and the case law cited above, that is legally impermissible.
Hudson, 653 So.2d at 1073.
Based on the reasoning of Frazier, Gurney, and Hudson, because Mr. Claudio was only 50% responsible for the death of Ismelys Regalado, he is entitled to contribution from his joint tortfeasor, the negligent parent/plaintiff Mrs. Regalado.[17] See, e.g., Hudson, 653 So.2d at 1073 (reversing and remanding for new judgments to account for contribution from the negligent parent).
Finally, we find no merit to Mr. Claudio’s argument that he is entitled to a set-off from Mr. Regalado’s judgment based on a claim for vicarious liability because Mr. Regalado was the co-lessee of Mrs. Regalado’s vehicle. The record does not support his argument that the issue was preserved as to him.
VI. Conclusion
Because we conclude that Mr. Claudio should have been allowed to pursue his claim for contribution in this lawsuit, we reverse that part of the final judgment that awarded Mrs. Regalado $500,000 and remand for resolution of the contribution issue and apportionment of the damage award to Mr. Regalado as between Mr. Claudio and Mrs. Regalado.
Because of the minor difference in procedural posture between a counter-defendant such as Mrs. Regalado and a third-party defendant as discussed in T & S Enterprises Handicap Accessibility, Inc. v. Wink Industrial Maintenance & Repair, 11 So.3d 411 (Fla. 2d DCA 2009), we certify the following questions to the supreme court as ones of great public importance:
AFTER THE EFFECTIVE DATE OF CHAPTER 2006-6, SECTION 1, AT 191-92, LAWS OF FLORIDA, IS A DEFENDANT PRECLUDED FROM RAISING A CLAIM FOR CONTRIBUTION IN A SUIT ALLEGING NEGLIGENCE VIA A COUNTERCLAIM OR A THIRD-PARTY CLAIM?
IF THE ANSWER TO THE ABOVE QUESTION IS YES, AND UNDER THE CIRCUMSTANCES OF THIS CASE, MUST JUDGMENT FINDING THE DEFENDANT PARTIALLY AT FAULT BE PAID IN FULL BY THE 'DEFENDANT REGARDLESS OF THAT DEFENDANT’S PARTIAL FAULT BEFORE THE DEFENDANT IS ENTITLED TO CONTRIBUTION FROM THE PLAINTIFF/CO-TORT-FEASOR?
*461 Affirmed in part, reversed in part, and questions certified.
KELLY and LaROSE, JJ., Concur.

. Dolores Claudio Ortiz is the appellant in the companion case of Ortiz v. Regalado, No. 2D11-1071, which was consolidated with this case for record purposes only.

. Mr. Regalado sought damages individually in his capacity as a statutory survivor of his deceased minor daughter under section 768.18, Florida Statutes (2006), part of Florida's Wrongful Death Act, sections 768.16-.26. Mrs. Regalado also sued as a statutory surviv- or as well as for her own injuries.

. Mr. Claudio does not dispute the propriety of this $793.76 award to Mr. Regalado as the personal representative of the estate of Isme-lys Regalado.

. Generally, before a case is perfected and assigned to a merits panel for disposition on the merits, a motions panel will hear a motion to dismiss such as the one the Regalados filed. However, in this case, the motions panel deferred the Regalados’ motion to dismiss to the merits panel.

. This “initial judge” presided pretrial, at trial, and heard the immediate posttrial motions. A second and then a third judge heard subsequent posttrial motions.

. Fabre v. Marin, 623 So.2d 1182 (Fla.1993). “A ‘Fabre defendant' is a nonparty defendant whom a party defendant asserts is wholly or partially responsible for the negligence alleged." Salazar v. Helicopter Structural & Maint., Inc., 986 So.2d 620, 622 n. 1 (Fla. 2d DCA 2007).

. Thus it can be said that in a single suit a person subject to contribution and a Fabre defendant are mutually exclusive.

. We note that the doctrine of interspousal immunity has been abrogated in Florida. Cf. Fabre, 623 So.2d at 1186 n. 2 ("If the accident had happened today, Mrs. Marin could sue her husband [who was held jointly liable for her injuries] because the doctrine of inter-spousal immunity has now been abrogated. Waite v. Waite, 618 So.2d 1360 (Fla.1993).").

. We also find no merit in the Regalados’ argument that the contribution claim was not ripe for resolution in this suit because Mr. Claudio had not yet paid the full damage award to Mrs. Regalado.

. The Regalados argue that the initial judge correctly denied Mr. Claudio leave to amend his answer to add a counterclaim because the proposed counterclaim for contribution he submitted with his motion to amend was defective. We do not reach the merits of whether Mr. Claudio properly pleaded a counterclaim for contribution, only that he should have been allowed to amend his answer to add a counterclaim for contribution. If his contribution counterclaim is defectively pleaded, we are certain that counter-defendants' counsel will bring that to the attention of the trial court.

.See § 768.18 (defining who is a survivor for purposes of the Wrongful Death Act).

. It does not appear from our reading of Frazier that the child’s aunt was a named party; she may have been a Fabre defendant because she was not a named appellee.

. The Third District's calculations were the following: As the starting point, the father must receive the full $100,000 the jury awarded him. Section 768.81 controlled as between Metro-Dade and the aunt in relation to the father’s award, because she was not a statutory survivor, so Metro-Dade should not be responsible for her part (39.5% or $39,500) of the father’s award, leaving Metro-Dade responsible (as a preliminary calculation) for the remainder, or $60,500. 701 So.2d at 420. As a separate calculation regarding for what portion of the mother’s award Metro-Dade was responsible, the district court had calculated that Metro-Dade owed the mother $73,500. Id. at 421. Turning back to the joint and several responsibility for the father’s award, the mother's negligence was determined to be 45.8% or $45,800 of the father’s award. Therefore, the Third District concluded that as a contribution to Metro-Dade, this $45,800 would be set-off from what Metro-Dade had to pay the mother, thereby reducing the $73,500 that Metro-Dade had to pay the mother to $27,700. Id.

.In Frazier, the jury had awarded the mother $500,000 which in the judgment the trial court properly reduced by her 45.8% negligence to $271,000. Id. The Third District *459 then further reduced her award by the aunt's percentage of negligence down to $73,500.

. There was also a third party suit against the fence company that had enclosed the pool, 588 So.2d at 245, that is not relevant to our discussion.

. The trial court entered judgment in favor of Mr. Moss for only $50,000, i.e., 10% of the jury's award due to his own negligence, to be paid $25,000 by Mr. Hudson and $25,000 by Mrs. Hudson. Although the opinion is silent as to whether there was any issue regarding this $50,000 judgment in favor of Mr. Moss, it is clear that no change was needed due to the application of the comparative fault act, section 768.81, Florida Statutes (1993).

. In opposition, the Regalados cite T & S Enterprises Handicap Accessibility, Inc. v. Wink Industrial Maintenance & Repair, 11 So.3d 411 (Fla. 2d DCA 2009), for the proposition that Mr. Claudio’s claim for contribution was not ripe because he has not yet paid the full award to Mr. Regalado. We are not persuaded of this case’s applicability to Mr. Claudio's case inasmuch as T & S Enterprises examined the trial court’s dismissal of a third-party complaint for contribution against Wink Industrial, which was not a party to the underlying suit. In contrast, Mr. Claudio was attempting and was precluded from pleading a counterclaim against the plaintiff in his suit. Cf. Zurich Am. Ins. Co. v. Hi-Mar Specialty Chems., LLC, 2010 WL 298392, at *4 (S.D.Fla. Jan. 19, 2010) (interpreting T & S Enterprises to mean that "the current version of section 768.81 appears to have ‘rendered obsolete’ prior case law that a defendant could file a third-party claim against another in the same case brought by the plaintiff, even though the liability of the third-party plaintiff had not yet been established”).